IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


HELEN P. EDIGER,

               Plaintiff,

vs.                                Case No. 11-1042-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

               Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On March 26, 2010, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 13-22). Plaintiff alleges that she has been disabled since February 12, 2007 (R. at 13). Plaintiff is insured for disability insurance benefits through December 31, 2011 (R. at 15). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since February 12, 2007, her alleged onset date (R. at 15). At step two, the ALJ found that plaintiff had the following severe

4

impairments: history of left distal radius fracture and epicondylitis (R. at 15).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17).  After determining plaintiff's RFC (R. at 17), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 20).  At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 21).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III.  Did the ALJ err by failing to address whether plaintiff was of borderline age?**

Plaintiff argues that the ALJ erred by failing to consider or address the fact that plaintiff fell into a borderline situation on the date of the ALJ decision.  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  To meet this burden, the Commissioner may rely on the Medical-Vocational Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2.  Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).  The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience. Thompson, 987 F.2d at 1487.  The Commissioner has established

three age categories: younger person (under age 50), person
closely approaching advance age (50-54), and person of advanced
age (55 and over).  20 C.F.R. § 404.1563 (c,d,e).  Furthermore,
in some circumstances, the regulations consider persons age 45-49
to be more limited than persons who have not attained age 45.  20
C.F.R. § 404.1563(c).

The regulations contain the following language:

> We will not apply the age categories
> mechanically in a borderline situation. If
> you are within a few days to a few months of
> reaching an older age category, and using the
> older age category would result in a
> determination or decision that you are
> disabled, we will consider whether to use the
> older age category after evaluating the
> overall impact of all the factors of your
> case.

20 C.F.R. § 404.1563(b) (2011 at 392).

Plaintiff was born on June 30, 1955 (R. at 20, 328).  The
ALJ issued his decision on March 26, 2010 (R. at 22).  Plaintiff
was therefore 54 years and 9 months old at the time of the ALJ
decision, or 3 months short of her 55th birthday.  The ALJ found
that plaintiff was 51 years old, and therefore was an individual
closely approaching advanced age at the time she alleged that she
became disabled (R. at 20).  The rule cited by the ALJ in his
decision, 202.14 (R. at 21), is one of the rules for persons
closely approaching advanced age.  20 C.F.R. Pt. 404, Subpt. P,
App. 2 (2011 at 600).

The ALJ found that plaintiff was 51 years old on the date

6

that she alleged she became disabled (R. at 20). However, the ALJ did not consider plaintiff's age on the date of the ALJ decision. On that date, plaintiff was 3 months short of her 55th birthday. Plaintiff argues that the ALJ was required to address the issue of whether plaintiff, because of her age at the time of the ALJ decision, falls within a borderline situation and should be considered under the next age category of advanced age. The ALJ never discussed in his decision whether plaintiff fell in a borderline situation, or whether to use the older age category because she was within 3 months of her 55th birthday at the time of the ALJ decision.

In the case of <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1134 n.5 (10th Cir. 1998), the court held as follows:

> The ALJ never addressed the issue of whether Mr. Daniels fell within the borderline or whether he should be considered in the next age bracket. Determining whether a claimant falls within a borderline situation appears to be a factual rather than discretionary matter, and the ALJ erred by not making the necessary factual finding. [citation omitted] Even were this considered a discretionary matter, the ALJ would have abused that discretion by failing to exercise it. [citation omitted]

If plaintiff is found to be in a borderline situation, the Commissioner must determine which of the categories on either side of the borderline best describes the claimant, and the Commissioner may apply that category in using the grids. Like any factual issue, a finding regarding the appropriate age

7

category in which to place a claimant must be supported by
substantial evidence.  Daniels, 154 F.3d at 1136.

In the case of Cox v. Apfel, 166 F.3d 346 (table), 1998 WL
864118 at *4 (10th Cir. Dec. 14, 1998), plaintiff was within 6
months of the next age category.   The court held:

> Finally, because plaintiff was within six
> months of the next age category, that is,
> advanced age, at the time the ALJ issued his
> decision, he erred by not addressing whether
> plaintiff was of borderline age before
> choosing a rule from the grids. See 20 C.F.R.
> §§ 404.1563(a), 416.963(a) (both stating:
> "[W]e will not apply these age categories [in
> the grids] mechanically in a borderline
> situation.")

In the case of Welch v. Astrue, Case No. 09-1411-SAC (D.
Kan. Dec. 15, 2010; Doc. 14 at 10-15), plaintiff was 5 ½ months
short of his 50th birthday on the date of the ALJ decision, and
thus within 5 ½ months of fitting the age category of person
closely approaching advanced age.   The court held that the ALJ
clearly erred by not addressing whether the plaintiff was of
borderline age before utilizing the grids.   The court further
held that the ALJ must make a factual determination of whether
plaintiff falls within a borderline situation, and, if so,
whether he should be considered in the next age bracket.

In the case of Strauser v. Astrue, Case No. 08-1395-JTM (D.
Kan. Feb. 2, 2010), plaintiff was 5 months short of his 50th
birthday at the time of his decision.   The court held that the
ALJ erred by not making the necessary factual finding of whether

8

plaintiff falls within a borderline situation because he was 5 months short of his 50th birthday at the time of the ALJ decision.  <u>Strauser</u>, Doc. 14 at 14-17.

In the case of <u>Damian v. Astrue</u>, Case No. 06-1132-JTM (D. Kan. March 26, 2007), plaintiff was 5 months and 5 days short of his 45th birthday, at the time of the ALJ's decision.  Relying on <u>Daniels</u> and <u>Cox</u>, the court held that the ALJ erred by not making the necessary factual finding of whether plaintiff falls within a borderline situation because he was just over 5 months short of his 45th birthday at the time of the ALJ decision.  <u>Damian</u>, Doc. 15 at 6-8.

In the case before the court, the ALJ stated as follows:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.

(R. at 21).  The ALJ then relied on vocational expert (VE) testimony to establish that plaintiff could still work given her limitations (R. at 21).  In light of plaintiff's additional limitations beyond that of light work, the ALJ only utilized the grids as a "framework" to determine whether sufficient jobs remained within plaintiff's range of residual functional capacity (R. at 21).  <u>See Thompson v. Sullivan</u>, 987 F.2d 1482, 1488 (10th Cir. 1993).

9

However, defendant concedes that considering plaintiff's education, RFC and past work experience, the medical-vocational guidelines or grids (202.04 and 202.06) would direct a finding of disabled for plaintiff at age 55 (Doc. 17 at 18).  If the ALJ had utilized either grid 202.04 or 202.06 instead of 202.14, those grids would have directed a finding that plaintiff was disabled, obviating any need for VE testimony because the rules in Appendix 2 are "conclusive" rather than "presumptive."  There is no provision in either the Social Security Act or the regulations for an ALJ to rebut the conclusion directed in the regulations contained in Appendix 2.  Specifically, the ALJ cannot rebut the conclusion in the grids by the use of vocational expert testimony.  SSR 83-5a, 1983 WL 31250; see Lounsburry v. Barnhart, 468 F.3d 1111, 1115-1116 (9th Cir. 2006).[1]

The case law clearly establishes that the ALJ erred by not addressing whether the plaintiff is of borderline age before

_____

[1]The court held that, where application of the grids directs a finding of disability, that finding must be accepted by the Commissioner whether the impairment is exertional or results from a combination of exertional and non-exertional impairments. Because the grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and nonexertional impairments, they may not be used to direct a conclusion of nondisability.  In other words, where a person with exertional and nonexertional limitations is disabled under the grids, there is no need to examine the effect of the non-exertional limitations.  But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately.  Therefore, under no circumstances may a vocational expert's testimony supplant or override a disability conclusion dictated by the Guidelines. Id.

utilizing the grids.  As in <u>Daniels</u>, the ALJ in this case never addressed the issue of whether plaintiff fell within a borderline situation, or the issue of whether she should be considered in the next age bracket.  The ALJ erred by not making the necessary factual findings on these issues.  For this reason, the court finds that substantial evidence does not support the ALJ's finding that plaintiff can perform other work in the national economy.  When this case is remanded, the ALJ must make a factual determination of whether plaintiff falls within a borderline situation, and, if so, whether she should be considered in the next age bracket.  Like any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence.  <u>Daniels</u>, 154 F.3d at 1136.

**IV.  Did the ALJ err by failing to consider all of the medical opinion evidence?**

The record in this case includes two state agency mental assessments.  The first, by Dr. Cohen, found that plaintiff had moderate limitation in one of four broad categories of functional limitations, i.e., difficulties in maintaining social functioning (R. at 341, 351).  In a more detailed mental RFC assessment, Dr. Cohen found that plaintiff had a moderate limitation in the ability to maintain attention and concentration for extended periods, and in the ability to interact appropriately with the general public (R. at 355-356).  The second, by Dr. Stern, found

11

that plaintiff had moderate limitation in two of four broad
categories of functional limitations, i.e., difficulties in
maintaining social functioning; and difficulties in maintaining
concentration, persistence, or pace (R. at 451, 461).  In a more
detailed mental RFC assessment, Dr. Stern found that plaintiff
had a moderate limitation in the ability to carry out detailed
instructions, in the ability to maintain attention and
concentration for extended periods, and in the ability to
interact appropriately with the general public (R. at 465-466).
The ALJ never addressed any of these findings in his decision.
At step two, the ALJ, without addressing the opinions of either
Dr. Cohen or Dr. Stern, made findings in the four broad
categories of mental functional limitations that were less
restrictive than the findings in the reports of Dr. Cohen and Dr.
Stern (R. at 16).  Finally, in making his RFC findings, the ALJ
failed to include, without any explanation, any of the
limitations set forth in the mental RFC assessments by Dr. Cohen
or Dr. Stern.

An ALJ must evaluate every medical opinion in the record.
Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  This
rule was recently described as a "well-known and overarching
requirement."  Martinez v. Astrue, 2011 WL 1549517 at *4 (10th
Cir. Apr. 26, 2011).  Even on issues reserved to the
Commissioner, including plaintiff's RFC and the ultimate issue of

disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion.  20 C.F.R. § 404.1527(d).  According to the regulations, 20 C.F.R. § 404.1527(f)(2)(i) states that ALJ's must consider findings of nonexamining state agency medical and psychological consultants.  Furthermore, 20 C.F.R. § 404.1527(f)(2)(ii) states that unless the treating source opinion is given controlling weight (which did not occur in this case), the ALJ "must" explain in the decision the weight given to the opinions of state agency medical or psychological consultants.  SSR 96-6p reiterates that ALJs may not ignore the opinions of state agency consultants, and must explain the weight given to these opinions in their decisions.  1996 WL 374180 at *1, 2.  For these reasons, it is clear legal error to ignore a medical opinion.  <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  Furthermore, according to SSR 96-8p:

> If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence

that he rejects.  <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010
(10th Cir. 1996).  Furthermore, the general principle that the
ALJ is not required to discuss every piece of evidence does not
control when an ALJ has opinion evidence from a medical source.
In such a situation, the ALJ must make clear what weight he gave
to that medical source opinion.  <u>Knight v. Astrue</u>, 388 Fed. Appx.
768, 771 (10th Cir. July 21, 2010).  The regulations and rulings
set forth above clearly dictate that the ALJ must discuss all
medical opinion evidence, particularly when the ALJ's findings
conflict with those medical opinions.  The ALJ clearly erred by
ignoring the opinions of Dr. Cohen and Dr. Stern, and by failing
to either include their limitations in his RFC findings, or, in
the alternative, by failing to explain why he did not include
their limitations in his RFC findings.  According to SSR 96-8p,
the RFC assessment "must include a narrative discussion
describing how the evidence supports each conclusion, citing
specific medical facts...and nonmedical evidence."  The ALJ must
explain how any material inconsistencies or ambiguities in the
evidence in the case record were considered and resolved.  "The
RFC assessment must always consider and address medical source
opinions.  If the RFC assessment conflicts with an opinion from a
medical source, the ALJ must explain why the opinion was not
adopted."  SSR 96-8p, 1996 WL 374184 at *7.  On remand, the ALJ
must make RFC findings that comply with SSR 96-8p.

14

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 3rd day of January 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge